UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GREEN TREE SERVICING, LLC                                                          APPELLANT

v.                                                                        CIVIL ACTION NO. 3:07-CV-549-S

SHANNON G. MANN and
JOHN W. MANN                                                                        APPELLEES

**MEMORANDUM OPINION AND ORDER**

      This matter is before the court on appeal by appellant Green Tree Servicing, LLC ("GTS") from the Bankruptcy Court's Order granting the motion for emergency relief filed by the debtor-appellees Shannon G. Mann and John W. Mann (collectively, the "Manns"). In their emergency motion for relief, the Manns sought to use $42,400.00 of the insurance proceeds paid upon the destruction by fire of their mobile home to purchase a new mobile home. GTS, the holder of a claim secured by the original mobile home and the Manns' real estate upon which the mobile home was located, objected to the motion. The Bankruptcy Court granted the emergency motion for relief and ordered GTS to turn over to the Manns $42,400.00 of the insurance proceeds which the Manns were to use to purchase a new mobile home. For the reasons stated herein, this court will reverse the decision of the Bankruptcy Court.

**BACKGROUND**

      The Manns filed a Chapter 13 bankruptcy petition on June 19, 2006. At that time they owned a 1999 Fleming mobile home (the "Original Home") located on a six acre lot at 5615 High Plains Road, Vine Grove, Kentucky. The Original Home and six acre lot had been purchased in 1999 through a loan granted by Greenpoint Credit Corporation ("Greenpoint"), a predecessor in interest to GTS. The loan was secured by a mortgage to Greenpoint (the "Mortgage"), which is now held by GTS. The Manns

proposed in their Chapter 13 plan (the "Chapter 13 Plan") to make payments on the loan amount owed to GTS. The Chapter 13 Plan was confirmed on August 8, 2006.

Paragraph 4 of the Mortgage required the Manns to provide hazard insurance coverage with GTS as the loss payee. Paragraphs 4 and 6 of the Mortgage together allowed GTS, if insurance lapses, to procure insurance and to charge the Manns the cost of such insurance. Paragraph 4 of the Mortgage also governs the application of any insurance proceeds. It states in relevant part:

> Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due with any excess paid to Borrower.

The Manns allowed the insurance to lapse prior to filing their Chapter 13 petition. In accordance with the Mortgage, GTS obtained so-called "force-placed" insurance at the cost of the Manns. The policy was issued by American Bankers Insurance Company ("ABIC") with the Manns listed as insured and GTS listed as lien holder, effective May 19, 2006 through May 19, 2007.

Within four months of filing their Chapter 13 petition, the Manns defaulted on their loan payments to GTS. On October 17, 2006, GTS filed a Motion for Relief From the Automatic Stay (the "GTS Motion") asking the Bankruptcy Court to grant it relief so it could initiate a state court action to enforce its lien interest against the Original Home and six acre lot. At the time of the filing of the GTS Motion, the Manns were indebted to GTS in the amount of $62,871.93 which included principal, accrued interest, and the amount owed for the force-placed insurance policy purchased by GTS. On November 28, 2006, the Manns entered into an agreed order with GTS, which resolved the GTS Motion. The Bankruptcy Court entered the agreed order on November 29, 2006 (the "Agreed Order"). Under the terms of the Agreed Order, the Manns agreed to not only to make payments toward their post petition arrears, but also to keep up with their regular monthly payments. Under the terms of the Agreed Order,

if the Manns failed to make any payment within fifteen days of its respective due date, then GTS could obtain relief from the automatic stay by filing a Notice and Certification of Default (the "Default Certification") with the Bankruptcy Court.

The Original Home was severely damaged by fire on December 26, 2006. ABIC inspected the damage, declared the Original Home a total loss and issued a check made payable to both the Manns and GTS in the amount of $46,950.00 (the "Insurance Proceeds"). GTS received the Insurance Proceeds and they are being held in the escrow account of GTS's attorney. Following the destruction of the Original Home, the Manns stopped making payments to GTS because they believed GTS had received, or would receive, an insurance settlement payment from ABIC. On March 30, 2007, GTS filed the Default Certification.

The Manns filed an emergency motion on March 16, 2007 ("Emergency Motion"). They sought $42,400.00 of the Insurance Proceeds to purchase a 2007 Dutch or Giles mobile home to replace the destroyed Original Home (the "Replacement Home"). The Manns proposed to provide adequate protection to GTS by granting it the first and only lien on the Replacement Home. The Manns also proposed that the remaining $4,550.00 of the Insurance Proceeds be applied by GTS to the outstanding balance of their loan. Pursuant to the Manns' proposal, GTS was also to retain its mortgage on the Manns' six acre lot. At the time the Bankruptcy Court entered its order on this matter, the lot had a tax appraised value of $29,500.00. The Manns proposed to continue making all monthly payments under their loan and comply with all other provisions of the loan, including maintaining required insurance on the collateral.

In its opposition to the Manns' Emergency Motion, GTS argued that the Manns were not entitled to the Insurance Proceeds under Paragraph 4 of the Mortgage, because restoration or repair of the Original Home was not economically feasible. GTS also argued that the Insurance Proceeds were not

property of the Manns' bankruptcy estate because the Default Certification served to automatically terminate the stay and essentially effect an abandonment of the Insurance Proceeds by the Manns' bankruptcy estate.

On August 13, 2007, the Bankruptcy Court granted the Manns' Emergency Motion and ordered GTS to turn over to the Manns $42,400.00 of the Insurance Proceeds which the Manns were to use to purchase a new mobile home. The Bankruptcy Court determined that the term "restoration," as used in the Mortgage, included the replacement of the Original Home with the Replacement Home, and such replacement was economically feasible. The Bankruptcy Court also determined that the Manns were not in default of the Agreed Order, and, therefore, the Insurance Proceeds remained property of the Manns' bankruptcy estate. GTS appeals both of these determinations.

## DISCUSSION

This court reviews the Bankruptcy Court's conclusions of law de novo and upholds its findings of fact unless they are clearly erroneous. *In re 255 Park Plaza Assocs., Ltd. P'ship*., 100 F.3d 1214, 1216 (6th Cir. 1996). In Kentucky, the construction and legal effect of a contract or written instrument is a question of law. *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007) (citing *Morganfield Nat. Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992)). Accordingly, this court will review the Bankruptcy Court's construction of the Mortgage and Agreed Order de novo. "De novo review requires the [reviewer] to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks*, 219 B.R. 468, 469 (6th Cir. BAP 1998). "De novo means deciding the issue as if it had not been heard before." *Tedeschi v. Falvo*, 227 B.R. 662, 663 (6th Cir. BAP 1998).

I.

GTS first argues that the Bankruptcy Court erred by determining that the terms of the Mortgage allow for the Insurance Proceeds to be used by the Manns to *replace* the Original Home with the Replacement Home.

The rules of contract interpretation "dictate that the parties' intentions be discerned from the four corners of the document itself..." *Baker v. Coombs*, 219 S.W.3d 204, 207 (Ky.App. 2007). Paragraph 4 of the Mortgage states, in relevant part, that "insurance proceeds shall be applied to the *restoration* or *repair* of the *Property damaged*, if the *restoration* or *repair* is economically feasible and Lender's security is not lessened." (emphasis added). "Restore" is defined as "to bring back into existence or use" or "to bring back to an original state." *Webster's II New Riverside University Dictionary* (1994). "Repair" is defined as "to restore to sound condition after damage or injury." *Id.* Accordingly, Paragraph 4 of the Mortgage contemplates the use of the Insurance Proceeds to bring the Original Home back into existence or use, or back to its original state, after it has been damaged. Neither "restore," nor "repair" include "replacement" within their definitions. "Replace" is defined as "to take or fill the place of." *Id.* Clearly, the purchase of the Replacement Home to take or fill the place of the Original Home will not bring the Original Home back into existence or use, or back to its original state.

Although it might be economically feasible for the Manns to replace their Original Home with an entirely new mobile home, and although such replacement might not lessen GTS's security, such replacement is not provided for under the terms of the Mortgage. "[C]ourts cannot make a new contract for the parties under the guise of interpretation or construction but must determine the rights of the parties according to the terms agreed upon by them." *Meyers v. Kentucky Medical Ins. Co.*, 982 S.W.2d 203, 210 (Ky.App. 1997) (citing *Cheek v. Commonwealth Life Ins. Co.*, 126 S.W.2d 1084 (Ky. 1939)). Under the terms of the Mortgage, the Insurance Proceeds may be properly applied either: (1) to restore or repair the Original Home, if such restoration or repair is economically feasible and the GTS's security

will not be lessened; or (2) to reduce the amount owed by the Manns to GTS. Because it was completely destroyed by fire, it is not economically feasible to restore or repair the Original Home. Accordingly, the Insurance Proceeds must be applied to the outstanding debt owed by the Manns to GTS.

II.

GTS also argues that the Bankruptcy Court erred in determining that the Insurance Proceeds are property of the Manns' bankruptcy estate. GTS contends that its filing of the Default Certification terminated the automatic stay and essentially effected an abandonment of the Insurance Proceeds by the Manns' bankruptcy estate. GTS contends that it is now entitled to apply the Insurance Proceeds to the outstanding debt owed by the Manns.

The Bankruptcy Court noted that GTS was in possession of the Insurance Proceeds at the time it filed the Default Certification. According to the Bankruptcy Court, even though the Manns did not physically write a check for the loan payments due, because GTS was in possession of funds which represented those payments when it filed the Default Certification, the Manns were not in default of the Agreed Order and the stay was not terminated. The Bankruptcy Court determined that the Insurance Proceeds remained property of the Manns' bankruptcy estate. We disagree. Paragraph 4 of the Mortgage specifically states:

> Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of the payments.

Under this provision, even though GTS was in possession of the Insurance Proceeds, the Manns were not excused from making their regularly scheduled monthly payments. Accordingly, because the Manns failed to make such payments, the Manns were in default of the Agreed Order and GTS's filing of the Default Certification operated to terminate the automatic stay.[1]

---

[1] The court notes that in their brief, the Manns do not dispute that they were in default of the Agreed Order.
(continued...)

The Manns argue that even though they were in default of the Agreed Order, and even though the stay was terminated upon the filing of the Default Certification, the Insurance Proceeds remain property of the Manns' bankruptcy estate because they were not abandoned. According to the Manns, 11 U.S.C. § 554(b) required GTS to specifically request an order from the Bankruptcy Court stating that the Insurance Proceeds were abandoned.

Section 554(b) sets forth instances when a *trustee's* interest in property of the estate can be abandoned. Under the terms of the Manns' Chapter 13 Plan, title to Manns' property revested in the Manns upon the August 8, 2006 confirmation of the plan. *See* 11 U.S.C. § 1327(b) ("except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor"). If the Original Home had been in existence at the time the Manns defaulted under the terms of the Agreed Order, the stay would have been lifted upon GTS's filing of the Default Certification, and GTS would have been permitted to file an action in state court to enforce its lien interest in the Original Home. Because title to the Original Home would have revested in the Manns, the trustee would have had no interest in the Original Home to abandon. Title to the Insurance Proceeds is no different than title to the Original Home. Title to the Insurance Proceeds revested in the Manns upon confirmation of their Chapter 13 Plan, and no abandonment by the trustee is necessary in order for GTS apply the Insurance Proceeds to the amount owed by the Manns. GTS's filing of the Default Certification terminated the stay and essentially effected an abandonment by the Manns' bankruptcy estate of the Insurance Proceeds. Accordingly, the Insurance Proceeds cannot be considered property of the Manns' bankruptcy estate and GTS is entitled to apply the Insurance Proceeds to the outstanding debt owed by the Manns.

---

[1](...continued)
Specifically, they stated in their brief, "[o]bviously, [the Manns] defaulted and on March 30, 2007 [GTS] filed its notice with the [Bankruptcy] Court," and "[the Manns] did default, which is undisputed." *Brief for Appellees,* p. 8.

- 8 -

For the above stated reasons, and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the decision of the Bankruptcy Court is **REVERSED** and this matter is **REMANDED** to the Bankruptcy Court for further proceedings not inconsistent with this opinion.

**IT IS SO ORDERED** this